IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK11-40159-TJM |
| ) | |
| GRAND ISLAND LIQUOR MART AND ) | CH. 11 |
| TOBACCO ROW, LLC, ) | |
| ) | |
| Debtor(s). ) | |
| IN THE MATTER OF: ) | CASE NO. BK11-40160-TJM |
| ) | |
| RICHARD AND KIMBERLY WISEMAN, ) | CH. 11 |
| ) | |
| Debtor(s). ) | |
| IN THE MATTER OF: ) | CASE NO. BK11-40162-TJM |
| ) | |
| HASTINGS LIQUOR MART AND ) | CH. 11 |
| TOBACCO ROW, LLC, ) | |
| ) | |
| Debtor(s). ) | |

## ORDER

Trial was held in Lincoln, Nebraska, on February 16, 2011, regarding the debtors' motion to use cash collateral and objection by Pathway Bank.[1] Galen Stehlik appeared for the debtors and Donald Swanson and Kristin Farwell appeared for Pathway Bank.

Richard and Kimberly Wiseman are the owners of two limited liability companies: Grand Island Liquor Mart and Tobacco Row, LLC, a retail liquor, beer, wine and tobacco store in Grand Island, Nebraska, and Hastings Liquor Mart and Tobacco Row, LLC, a similar business in Hastings, Nebraska. Pathway Bank is the lender to both businesses, with a blanket first lien on inventory, accounts, fixtures and equipment. The bank has no lien on personal or real estate assets of the individual debtors, but does have a guarantee from them of all of the debt of the two businesses.

The consolidated tax return for 2009 (Fils. No. 48 through 51 in Case No. BK11-40159) shows the gross revenue from the two businesses in that year was approximately $1,985,000, with costs of goods sold of $1,511,000. With some other adjustments made, the gross income, before deducting operating expenses, was $476,000. Operating expenses were approximately $446,000, leaving a net profit of almost $30,000. The debt to the bank in 2009 was a little less than $700,000, and the debtors were paying the bank debt at a rate of approximately $7,400 per month.

In 2010, the debtors suffered an employee theft and borrowed an additional $60,000 to

---

[1] In Case No. BK11-40159, the motion is found at filing number 7 and the objection is filing number 17.
In Case No. BK11-40160, the motion is found at filing number 5 and the objection is filing number 14.
In Case No. BK11-40162, the motion is found at filing number 8 and the objection is filing number 21.

cover the resulting shortage. The monthly bank payment increased to $9,800. That amount proved to be too much for the businesses to support, partly because of increased competition in Grand Island and partly because of a decline in business due to road construction near the Grand Island store and the general economic downturn.

The debtors have made no bank payment since September 2010. The bank began a replevin action in January 2011. These Chapter 11 cases were then filed.

Debtors have requested permission to use cash collateral, the proceeds of the monthly sales of inventory, to purchase new inventory and pay operating expenses. As adequate protection for the bank's interest in the collateral, the debtors offer a monthly payment of $6,000; sales and expense reports on a daily, weekly, or monthly basis; and a physical inventory on a regular basis.

An initial hearing on the request to use cash collateral was held on affidavit evidence. A temporary order was entered allowing such use, subject to strict reporting requirements, and a final hearing with witness testimony was scheduled.

At the final hearing, evidence was presented by the debtors regarding their gross revenue from the operation of the two liquor stores, as gleaned from their 2009 tax return. Evidence was also presented concerning estimates of gross retail sales going forward in 2011 and actual and estimated operating expenses going forward (Fil. No. 53 in Case No. BK11-40159, hereafter referred to as "Consolidated Recapitulation").

The Consolidated Recapitulation shows projected gross receipts from both the Grand Island and Hastings stores and estimates monthly inventory replacement costs, rent, utilities, payroll and personal expenditures for the individual debtors. It also includes the proposed adequate protection payment of $6,000 per month, leaving a net reserve of $1,457 per month.

The Hastings store has been closed for at least a month and, although Mr. Wiseman testified that he would like to reopen the Hastings store or sell it, no testimony was provided with regard to a possible date of reopening. Since the Consolidated Recapitulation shows gross retail sales from Hastings for the year 2011 at $40,000 a month, that amount must be deducted from the total gross receipts and a percentage of inventory replacement costs must also be deducted. Although it is not totally clear, it appears from the testimony that the mark-up from the wholesale cost to retail is approximately 20% on the inventory. The reduction of $40,000 a month in gross sales, therefore, should result in a reduction of $32,000 a month from the inventory replacement costs. Making such an adjustment, the gross receipts on the Consolidated Recapitulation would be $90,000 per month and inventory replacement would be $66,800, leaving a margin of a little more than $23,000 to cover rent, utilities, payroll and personal expenditures of approximately $24,000. Other than the adjustment in inventory replacement costs at the Hastings store, at this time all of the other expenses at the Hastings store are continuing to accrue, including rent and utilities. With the Hastings store adjustment, and assuming there is no income from the store for the next several months, or for the full year 2011, it is obvious that there is no money available on a monthly basis to make adequate protection payments and there is no reserve on a monthly basis.

Although it is possible that the debtors will be able to reopen the Hastings store at some point, they will have already lost two months' worth of gross income as a result of the closing of the Hastings store in January and February of 2011. The risks to the bank's interest in the collateral must be evaluated with the fact of the Hastings store being closed at this time.

According to a physical inventory taken by representatives of Pathway Bank, the retail value of the total inventory in both stores on February 11, 2011, was $310,000. The wholesale value would be $250,000 to $260,000, according to the testimony of Mr. Wiseman. The wholesale value is the value the debtors must protect if they desire to use cash collateral, because that is the value the bank could obtain if inventory was seized and liquidated by the bank rather than sold at retail by a licensed seller.

If any of the estimates regarding gross sales and monthly expenses as shown on the Consolidated Recapitulation are not achieved, there is a distinct possibility that the wholesale value of the inventory as of the physical inventory date will not be maintained. Mr. Wiseman testified that the gross receipts for 2010 were less than in 2009, based partly on increased competition from a Walgreen's store in the area, as well as on a road construction project which made it difficult for people to get to the store. The Walgreen's competition is not going away and rent or utilities may increase. The risk to the bank's interest as of the date of the physical inventory is that if the debtors are unable to maintain the value of the collateral because of the lack of gross sales causing the debtors to limit the inventory replacement, the bank's position is at risk. The debtors need the gross sales as shown on the Consolidated Recapitulation in order to keep operating. In addition, if the Hastings store does not reopen and generate a significant portion of the gross sales shown on the Consolidated Recapitulation, there will be no way to preserve the inventory value and make the adequate protection payments, as mentioned above.

Mr. Wiseman testified that the debtors have nothing additional to offer as "backup" collateral. All they can offer is $6,000 a month and hope that business gets better.

The Bankruptcy Code, at 11 U.S.C. § 363, permits a debtor to use cash collateral without consent of those with an interest in it only if that interest is adequately protected. Case law provides that the standard to be used for determining whether to allow the use of cash collateral includes the following:

(1)    The court must establish the value of the secured creditor's interest;

(2)    The court must identify the risk to a secured creditor's value resulting from the debtor's request for use of cash collateral; and

(3)    The court must determine whether the debtor's adequate protection proposal protects the value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence.

Martin v. United States (In re Martin), 761 F.2d 472, 476-77 (8th Cir. 1985), as discussed in the case of In re Negus-Sons, Inc., 428 B.R. 511, 515 (Bankr. D. Neb. 2009).

After considering the interest of the bank and the risk to the bank's interest as discussed above, I find that the adequate protection offer of $6,000, even if coupled with a willingness to allow a physical inventory at any time and to provide regular financial information to the bank, is insufficient to protect the value of the bank's interest against risks to that value consistent with the concept of indubitable equivalence. The debtors acknowledge that the competition is not going away, and it is obvious that the projected gross income from the Hastings store as shown on the Consolidated Recapitulation is not achievable at this time and there is no guarantee that the wholesale value of the inventory will remain at the value determined by the physical inventory taken

shortly after the filing of the bankruptcy case. Therefore, the motion for use of cash collateral is denied.

IT IS ORDERED that the motion for use of cash collateral (Fil. No. 7 in Case No. BK11-40159, Fil. No. 5 in Case No. BK11-40160, and Fil. No. 8 in Case No. BK11-40162) is denied.

DATED:      February 24, 2011

BY THE COURT:

Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
  *Galen E. Stehlik
  Donald Swanson
  Kristin Farwell
  U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.